<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

NANCY SOEHNLE,                    )
                                 )  Civil Action
            Plaintiff            )  No. 08-cv-05697
                                 )
        vs.                      )  USCA Appeal
HESS CORPORATION,                )  Case Number 10-1344
                                 )
            Defendant            )


                    *    *    *


APPEARANCES:

        KIRK L. WOLGEMUTH, ESQUIRE
            On behalf of Plaintiff

        MARVIN M. GOLDSTEIN, ESQUIRE
            On behalf of Defendant


                    *    *    *


<u>M E M O R A N D U M</u>

JAMES KNOLL GARDNER,
United States District Judge

        This Memorandum pursuant to Rule 3.1 of the Third

Circuit Local Appellate Rules is in response to the Notice of

Appeal filed January 26, 2010 by plaintiff.[1]

─────────────

        [1]    Plaintiff's Notice of Appeal was filed prematurely on January 26,
2010 (document 42).  As indicated in this Memorandum, on January 19, 2010 I
heard oral argument on cross-motions for summary judgment.  At the conclusion
of the argument and on the record, I dictated an Order disposing of the
motions and orally articulated my reasons and analysis for granting
defendant's motion for summary judgment and denying plaintiff's motion for
summary judgment.  On January 26, 2010, before the January 19 Order was
transcribed and filed, plaintiff filed her Notice of Appeal.  After
transcription of the Notes of Testimony and review, correction and signing of
the Order, the Order was filed on February 17, 2010 (document 46), at which

                                    (<u>Footnote 1 continued</u>):

On August 28, 2009 the parties filed cross-motions for summary judgment on the issue of liability.  The gravamen of the matter is whether plaintiff, as the sole site manager of a Hess gas station, was a "bona fide executive" and therefore exempt from the statutory requirement that her employer pay her employees' overtime, as set forth in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207-219.

On January 19, 2010 I heard oral argument on the cross-motions.  By Order dictated on the record at oral argument and dated January 19, 2010, which Order was filed February 17, 2010, I granted defendant's motion for summary judgment, denied plaintiff's motion for summary judgment, entered judgment in favor of defendant and against plaintiff on the issue of liability, and dismissed plaintiff's Complaint.  Specifically, I concluded that plaintiff acted in a "bona fide executive" capacity and, therefore, is properly characterized as an exempt employee under 29 U.S.C. § 213(a)(1).

After oral argument and recess for deliberations, I reopened court and dictated on the record and in the presence of counsel, my Order disposing of the cross-motions for summary

---

(Continuation of footnote 1):

time the matter became ripe for appeal.  This Memorandum is filed to supplement my January 19, 2010 Bench Opinion by clarifying the application of the Chevron doctrine, in the event the United States Court of Appeals for the Third Circuit exercises its discretion to hear plaintiff's premature appeal on the merits.

judgment and an articulation of my reasons for such disposition. I incorporate those reasons here.[2]  This Memorandum clarifies my application of the doctrine set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[3]

Under Chevron,

> when a court reviews an agency's construction of the statute which it administers, it is confronted with two questions.  First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.... [However,], if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, 467 U.S. at 842-843, 104 S.Ct. at 2781-2782, 81 L.Ed.2d at 702-703.

In this case, I concluded that pursuant to 29 U.S.C. § 213(a)(1), Congress clearly and unambiguously delegated to the

---

[2]    See Notes of Testimony styled "Oral Argument Before The Honorable James Knoll Gardner[,] United States District Court Judge", dated January 19, 2010 and filed March 8, 2010 (Document 49)("N.T."), at pages 86-87 (Order) and pages 88-124 (Bench Opinion).

On March 4, 2010 I entered an Order, filed March 5, 2010 (Document 48), amending the Notes of Testimony to correct certain typographical errors and to make the Notes of Testimony more accurately reflect what occurred at the January 19, 2010 oral argument on the cross-motions for summary judgment and during the announcement of my Bench Order and Bench Opinion.

[3]    My analysis and application of the Chevron doctrine to this case appears in the record at N.T. pages 120, line 24 to 123, line 23.

United States Secretary of Labor responsibility for defining the
terms "bona fide executive, administrative, or professional
capacity" for purposes of exempting such employees from the
overtime requirement set forth in 29 U.S.C. § 207.

Specifically, § 213(a)(1) provides that the overtime
requirement does not apply to

> ...any employee employed in a bona fide executive,
> administrative, or professional capacity...(as
> such terms are defined and delimited from time to
> time by regulations of the Secretary...except that
> an employee of a retail or service establishment
> shall not be excluded from the definition of
> employee employed in a bona fide executive or
> administrative capacity because of the number of
> hours in his workweek which he devotes to
> activities not directly or closely related to the
> performance of executive or administrative
> activities, if less than 40 per centum of his
> hours worked in the workweek are devoted to such
> activities)....

29 U.S.C. § 213(a)(1).[4]  Thus, an "employee employed in a bona

---

[4]     Plaintiff interprets § 213(a)(1) as requiring that 60% of an
employee's weekly job duties must be directly or closely related to the
performance of executive duties in order to qualify for exemption from
overtime pay.  As I explained on the record on January 19, 2010, I disagree
with plaintiff's reading of the statute.

    On the contrary, I agree with defendant's contention that Congress
has delegated to the Secretary of Labor full discretion to define the terms
"bona fide executive, administrative, or professional capacity" subject to the
limitation that, in doing so, the Secretary may not exclude from such
definition a retail or service employee based solely on the "number of hours
in his workweek which he devotes to activities not directly or closely related
to the performance of executive or administrative activities, if less than 40
per centum of his hours worked in the workweek are devoted to such
activities".

    I concluded that the final phrase ("if less than 40 per centum of
his hours worked in the workweek are devoted to such activities") is
ambiguous.  In particular, it is unclear whether "such activities" refers to
"activities not directly or closely related to the performance of executive or
administrative activities" (i.e., non-managerial activities) or refers to
"executive or administrative activities" (i.e., managerial activities).

-4-

fide executive, administrative, or professional capacity", as defined by the Secretary of Labor subject to the limited exception set forth in § 213(a)(1), is an "exempt" employee.

However, the precise question at issue in this matter is whether plaintiff, as an employee who spends 85 percent of her time on non-managerial duties and 15 percent of her time on managerial duties, must be paid overtime. Section 213(a)(1) does not directly speak to this question. Rather, the statute establishes an exception from the overtime requirement for employees who serve in a "bona fide executive, administrative, or professional capacity", and delegates authority to the Secretary of Labor to define those terms. Accordingly, I conclude that Congress has not directly spoken to the precise question at issue in this matter, for purposes of the first <u>Chevron</u> factor.

Therefore, I must consider whether the applicable

------

(<u>Footnote 4 continued</u>):

(<u>Continuation of footnote 4</u>):

For reasons I articulated on the record on January 19, 2010 (N.T., page 98, line 18 to page 106, line 11), that ambiguity is not relevant to the parties' dispute. Specifically, as discussed below, the restriction set forth in § 213(a)(1) only prevents the Secretary from using a strictly quantitative test, the particular quantities of which are unclear in the statute. The relevant regulations promulgated by the Secretary of Labor are not inconsistent with this restriction because they set forth a qualitative test, not a quantitative test.

Thus, the regulations promulgated by the Secretary of Labor do not exclude any employee from the definition of "bona fide executive, administrative, or professional capacity" based solely on the percentage of time she spends on any sort of duties. Rather, the Secretary has set forth a test which requires examination of numerous factors including, but not limited to, the number of hours spent on managerial duties. Because the ambiguity identified above is not relevant to this dispute, I need not address it further.

regulations set forth by the agency are based on a permissible construction of the statute.  <u>Chevron</u>, 467 U.S. at 842-843, 104 S.Ct. at 2781-2782, 81 L.Ed.2d at 703.

The court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question had arisen in a judicial proceeding."  <u>Chevron</u>, 467 U.S. at 843 n.11, 104 S.Ct. at 2782 n.11, 81 L.Ed.2d at 703 n.11.  Rather, where the agency has filled a gap explicitly left by Congress, "such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."  <u>Chevron</u>, 467 U.S. at 843, 844, 104 U.S. at 2782, 81 L.Ed.2d at 703.

The regulations at issue are as follows.  According to the United States Labor Department regulations to the FLSA,

> (a)  The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> > (1)  Compensated on a salary basis at a rate of not less than $455 per week ...exclusive of board, lodging or other facilities;
> >
> > (2)  Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

> (3) Who customarily and regularly
>     directs the work of two or more
>     other employees; and
>
> (4) Who has the authority to hire and
>     fire other employees or whose
>     suggestions and recommendations as
>     to the hiring, firing, advancement,
>     promotion or any other change of
>     status of other employees are given
>     particular weight.

29 C.F.R. § 541.100(a)(1-4) (2010).

As indicated in this regulation, the second element of the definition of an executive employee requires the employee's primary duty to be "management of the enterprise".  29 C.F.R. § 541.100(a)(2).  The regulations define "management" as follows:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

The regulations define "primary duty" as follows:

(a) ...The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

(b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

(c) Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such

> assistant managers are closely supervised and
> earn little more than the nonexempt
> employees, the assistant managers generally
> would not satisfy the primary duty
> requirement.

29 C.F.R. § 541.700.

Thus, the applicable regulations in this case set forth a qualitative, rather than a quantitative, definition of the term "employee employed in a bona fide executive capacity". For the following reasons, and for reasons articulated by defense counsel on the record at the January 19, 2010 oral argument, I conclude that the agency's construction set forth above is permissible.

Section 213(a)(1) clearly delegates broad authority to the Secretary of Labor to define "employee employed in a bona fide executive capacity". The only exception set forth in that section, which I have addressed above at footnote 1, prohibits the Secretary from excluding an employee from that definition based solely on the number of hours worked in a particular capacity.

In other words, nothing within the regulations set forth above invokes a strictly quantitative test. The Secretary has not excluded any employee from the definition of "bona fide executive, administrative, or professional capacity" based solely on the number of hours worked in a particular capacity, and in fact has specified that "[t]ime alone...is not the sole test". 29 C.F.R. § 541.700(b). Therefore, the regulation is not

arbitrary, capricious, or manifestly contrary to the statute, and is entitled to deference under <u>Chevron</u>, <u>supra</u>.

Moreover, I note that the issue in this case is not whether the Secretary has inappropriately excluded plaintiff from the definition of an exempt employee, which is the only limitation set forth in § 213(a)(1). On the contrary, plaintiff contends that defendant-employer has inappropriately *included* her in the definition of an exempt employee. Therefore, I conclude that the limited restriction on the Secretary's otherwise broad discretion does not pertain to plaintiff's situation.

Accordingly, I conclude that the definition of plaintiff's employment status falls within the Secretary's broad discretion, and that the relevant regulations promulgated by the Secretary are permissible because they are consistent with that discretion.

Having determined that the regulations at issue are entitled to <u>Chevron</u> deference, and considering the undisputed facts regarding plaintiff's job duties, I concluded on the record in the January 19, 2010 Bench Opinion that plaintiff was properly included in the definition of "employee employed in a bona fide executive capacity" set forth in 29 C.F.R. § 541.100(a) and

related regulations discussed above.  I incorporate that analysis here.[5]

CONCLUSION

For the reasons set forth above and those reasons articulated on the record during the January 19, 2010 proceeding before me, I conclude that the definition of "employee employed in a bona fide executive capacity" set forth in 29 C.F.R. § 541.100(a)(1-4) is based on a permissible construction of 29 U.S.C. § 213(a)(1) and is entitled to <u>Chevron</u> deference.

Moreover, I conclude that plaintiff is properly characterized as an "employee employed in a bona fide executive capacity", and is therefore exempt from the overtime requirement set forth in 29 U.S.C. § 207.

Accordingly, by Order dated January 19, 2010 and filed February 17, 2010, I have granted defendant's motion for summary

---

[5]     N.T. page 89, line 7 to page 90, line 6; page 90, line 21 to page 91, line 12; page 93, line 18 to page 94, line 4; page 107, lines 17-24; page 112, line 11 to page 117, line 15; page 117, line 22 to page 118, line 18; page 119, line 14 to page 120, line 23.

Defense counsel argued that plaintiff had a salary of $34,000 a year, and that her assistant manager (presumably an hourly employee) earned nearly $24,000 a year.  Defense counsel argued that there is a $10,000 differential in their compensation, meaning that plaintiff's earnings were over 40 percent greater than the hourly employee's wages.  (N.T. page 84, lines 2 to 12).

In my Bench Opinion, I adopted both defense counsel's calculations and his analysis that the compensation differential was a factor supporting the conclusion that plaintiff was a managerial employee, and therefore exempt from the statutory requirement to be paid overtime.  (N.T. page 112, line 21 to page 113, line 14; page 114, lines 1-8).  However, at these figures, plaintiff's salary was nearly 30 percent, not over 40 percent, greater than the hourly employee's wage.  Because both a 30 percent and a 40 percent earnings differential are significantly more than an hourly employee's wages, the analysis remains sound, even though the calculation was inaccurate.

judgment, denied plaintiff's motion for summary judgment, entered judgment in favor of defendant and against plaintiff on the issue of liability, and dismissed plaintiff's Complaint.

BY THE COURT:

Date: _____     _____
                              James Knoll Gardner
                              United States District Judge